## Commonwealth *v.* Byrd, Appellant.

*Criminal law—Murder—Evidence—Case for jury.*

The Supreme Court will not reverse a conviction of murder of the first degree, where an inspection of the testimony shows that the issues involved were for the jury, and the record shows that the manner in which such issues were submitted, was not formally complained of.

Argued January 3, 1921.   Appeal, No. 2, May T., 1921, by defendant, from judgment of O. & T. Dauphin Co., June T., 1920, No. 46, on verdict of murder of the first degree, in case of Commonwealth v. Charles Byrd, alias Willie Palmer.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Indictment for murder.   Before HENRY, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Verdict, murder of the first degree, on which sentence of death was passed.   Defendant appealed.

*Error assigned,* inter alia, was refusal of new trial, quoting record.

*Mark T. Milnor,* with him *Maurice R. Metzger,* for appellant.

*Philip S. Moyer,* District Attorney, for appellee.

PER CURIAM, February 14, 1921:

Defendant has appealed from a sentence of death, on a conviction of murder in the first degree; he assigns for error only the final judgment and the refusal of the court below to grant him a new trial.

We have read the testimony; it plainly shows that the issues involved were for the jury; and the manner in which they were submitted is not formally complained of. Since the opinion of the learned court below fully covers the case, we affirm on the following excerpts therefrom:

"Defendant and Duff Haygood lived in a workmen's camp at Locust Grove, near Steelton. Haygood was a janitor at this camp. On the night of November 13, 1918, there was some trouble......between a man named Jolly and defendant, in which Haygood took part. Defendant claimed that he was struck by Jolly and Haygood on this occasion, and that Haygood then said that, if defendant were large enough to fight, he, Haygood, would cut his throat. Defendant also testified that Jolly and Haygood followed him to another shanty and made an assault upon him; that he passed Haygood the following night, when neither spoke and nothing occurred. On the night of November 15th both were in the pool room, and defendant left, according to his story, going to his own room, and, returning shortly thereafter, met Haygood and a man named Slim Evans. The witnesses for the Commonwealth testified that Haygood said nothing and offered no violence toward defendant, but that defendant, without warning and without provocation, drew his revolver and shot Haygood. Defendant testified that he came from his room with the revolver in his pocket and his hand upon the revolver; that, when he met Haygood and Evans, they separated, and he attempted to pass around Haygood, when Haygood grabbed his arms and in the struggle defendant's hand closed on the revolver and it was discharged; that he feared Haygood and intended to shoot either Haygood or Evans. Four bullet wounds were found on Haygood, [any one of] three of which were necessarily fatal, and there were no powder stains near these wounds. Defendant fled after the shooting, finally landing at Hog Island, where he worked under an assumed name; he

strongly denied his identity after arrest. Defendant was a man of slight size, and weighed possibly a little more than one-half as much as Haygood. No weapons were found upon the body of Haygood after his death.

"The defense was, either accidental shooting or a shooting in self-defense. Defendant himself admitted that he intended to shoot either Haygood or Evans, when he fired the shots; so it could not have been accidental. His description of what took place at the time of the shooting—not overlooking the disparity in the sizes and ages of the men and the grabbing of his arms by Haygood—would not warrant the conclusion that defendant's life was in danger or that he was in danger of grievous bodily harm at the hands of Haygood, or that he could have believed he was in such danger. This defense falling, it was an unlawful killing, presumed to be murder of the second degree. Here again, from defendant's own testimony, the manner in which he says Haygood grabbed his arms, would not be sufficient provocation to cause such passion or terror as to place a man beyond the control of his reason and thus reduce the killing to voluntary manslaughter. Further considering defendant's testimony, he stated it was his intention to kill either Haygood or Evans, so the killing was wilful. His description of what occurred on the night of the 13th would indicate that he had some reason for spite or grudge against Haygood, and his seeing Haygood at the pool room on the night of the 15th, his going to his own room and immediately returning with the revolver, and his hand upon the revolver, strongly indicates that he had planned and premeditated shooting Haygood, and was fully conscious of this purpose. From the evidence of defendant alone the jury would have been warranted in convicting him of murder of the first degree, but the evidence for the Commonwealth strongly indicates that there could be no possible doubt as to his guilt. This evidence tended to show that defendant attempted to steal Jolly's money on the night of the 13th; that he was

not followed by Jolly and Haygood; that he complained to officers that he had been assaulted by Jolly and Haygood, and, when they denied this, he made a statement that might be in the nature of a threat; that, at the time of the shooting, Haygood was going toward his own room to show Evans a new suit, which he (the deceased) had recently purchased; and that, when they met defendant, they did not separate, Haygood did not grab defendant's arms or attempt violence and said nothing to him; that defendant, without warning and without provocation, drew his revolver and fired the four shots at Haygood; that at least some of these shots were fired from a point to the left of Haygood and not directly from his front; and that defendant must have been at some distance from Haygood, as indicated by the absence of powder stains.

"Under this evidence a jury, in the honest performance of its duty, could hardly have done otherwise than convict defendant of murder of the first degree."

The assignments of error are overruled, the judgment is affirmed, and the record is remitted for the purpose of execution.